IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROSE MALONE                                                      PLAINTIFF

V.                                    NO. 13-5006

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Rose Malone, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying her claims for Child Disability Benefits under the provisions of Title II of the Social

Security Act (the Act) and Supplemental Security Income (SSI) under the provisions of Title

XVI of the Act.  In this judicial review, the Court must determine whether there is substantial

evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §

405(g).

**I.       Procedural Background:**

Plaintiff filed her application for child's insurance benefits on August 25, 2009, based

upon the account of her mother, wage earner Patricia Phillips, and her application for SSI on

June 30, 2009, alleging an inability to work since September 1, 1995, due to ADHD, depression,

mood disorder, and occupational defiance disorder.[2] (Tr. 10, 114-116, 133).  An administrative

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

[2]As indicated in Defendant's brief, the adjudicated period for Plaintiff's Child Disability claim is between September 1, 1995, her alleged disability onset date, and October 27, 2011, the date of the ALJ's decision, and the adjudicated period for her SSI claim is between June 30, 2009, the date she filed her application, and

-1-

hearing was held on June 29, 2011, at which Plaintiff appeared with counsel, and she and her mother testified. (Tr. 26-51).

By written decision dated October 27, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - obesity, mood disorder (depression), and personality disorder. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except as follows: The claimant can frequently lift and/or carry twenty five pounds, and occasionally fifty pounds, sit for a total of about six hours in an eight hour work day, and stand and/or walk for about six hours in an eight hour work day. The claimant must work where interpersonal contact with co-workers and the public is superficial and incidental to the work performed, the complexity of tasks is learned and performed by rote, and little judgment is required.

(Tr. 15). With the help of the vocational expert (VE), the ALJ determined that Plaintiff could perform such jobs as janitor, groundskeeper, and dishwasher. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 4, 2012. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 13, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are

---

October 27, 2011.

presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for

-3-

at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8ᵗʰ Cir. 1982); 20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff raises the following issues on appeal: 1) Whether the ALJ erred when she found Plaintiff had the RFC to perform medium work; 2) Whether the ALJ gave proper weight to the various physicians' opinions; and 3)Whether the ALJ erred with the hypothetical question he gave to the VE. (Doc. 13).

### A.   RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain

-4-

are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

The ALJ determined that Plaintiff had the RFC to perform medium work with certain limitations. (Tr. 15). In making this finding, the ALJ considered all of the medical records, the observations of the physicians, and Plaintiff's description of her own limitations.  The ALJ reported that Plaintiff's thyroid disorder was adequately managed by medications prescribed, and then addressed each of the opinions of the various treating, examining, and non-examining physicians, including Dr. Bill F. Payne, Dr. C.R. Magness, Cynthia J. Patton, Ph.D., Dr. Jarrod R. Adkisson, Terry L. Efird, Ph.D., and Brad F. Williams, Ph.D. (Tr. 15-18).  The ALJ gave little weight to the opinion of the non-examining physician, Dr. Payne, as she believed the medical evidence, when viewed as a whole, did not demonstrate an objective basis for a finding that Plaintiff could not perform work at least at the medium exertional level. (Tr. 16).  The ALJ also found Dr. Magness' opinion that Plaintiff was moderately limited in the ability to work, lift, and carry, secondary to body habitus (morbid obesity) and deconditioning, was not inconsistent with a finding that Plaintiff could perform medium exertional level work. (Tr. 16).  The ALJ addressed Dr. Adkisson's treatment, noting that Plaintiff's compliance with medical treatment had been inconsistent in that there were periods of not taking prescribed medications, and that

-5-

Dr. Adkisson reported on December 22, 2005, that some of what Plaintiff may be doing might be manipulative in nature to avoid having to leave home or go to school. (Tr. 17).

The ALJ discussed the report of Terry L. Efird, Ph.D., dated February 4, 2010, who indicated that Plaintiff said she had not received mental health services since 2008 and was taking no psychiatric medications, and that Plaintiff reported a lack of motivation to perform self-care or household chores. (Tr. 17). Dr. Efird found that Plaintiff was seen to be able to interact in a reasonably socially adequate manner and communicate in a reasonably intelligible and effective manner, and did not demonstrate any remarkable problems with attention, concentration, persistence or pace. Dr. Efird concluded that dysthymic disorder with personality disorder including cluster C traits was the most probable diagnosis. The ALJ mentioned that Dr. Efird noted that he was unable to determine the degree of conscious, volitional behavior contributing to Plaintiff's reported symptoms. (Tr. 17). The ALJ also found that Dr. Williams' assessment was not inconsistent with Dr. Efird's. (Tr. 18).

The Court finds it noteworthy that on November 17, 2006, it was reported that Plaintiff continued to struggle with growing up and seeing herself as an adult, and that her "excessive laziness" also affected her goals. (Tr. 363). "One of the things that she fears about adulthood is taking care of herself and having to do 'chores' of [sic] anything else independently." (Tr. 363). Plaintiff reported to OGC on January 4, 2007 that she believed, with the Concerta, she could concentrate and focus when she wanted to. (Tr. 366).

An OGC report dated January 31, 2008, indicated that Plaintiff continued to be unmotivated towards independence and that she often blamed laziness or forgetfulness to do homework and pursue a goal. (Tr. 407). Plaintiff admitted that laziness was still an issue and

-6-

continued to make no plans for the future. (Tr. 407).  In a March 4, 2008 OGC report, Plaintiff reported that she did not exercise the way she should and excused herself by indicating that the weather outside was not accommodating for exercise. (Tr. 413).  In a May 2, 2008 OGC report, the author indicated that Plaintiff's lack of motivation and apathy continued to contribute to lack of task completion. (Tr, 415). It was also reported that Plaintiff continued to find some contentment in withdrawal from friends and family. (Tr. 419).

In Dr. Efird's evaluation, he found that the ability to perform most activities of daily living adequately was "described as impaired by motivation." (Tr. 467).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC determination.

**B.     Weight Given Physicians' Opinions**:

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000)(citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

After reviewing the evidence of record, the Court finds that there was sufficient evidence for the ALJ to make an informed decision. As the Court noted above, in determining Plaintiff maintained the RFC to perform medium work with limitations, the ALJ specifically discussed

AO72A
(Rev. 8/82)

the relevant medical records, and the medical opinions of treating and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012). ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted).

Accordingly, the Court finds there is substantial evidence to support the weight the ALJ gave to the various opinions.

### C.   Hypothetical Question Posed to the VE:

In her hypothetical question to the VE, the ALJ asked the following:

> Q. Assuming an individual who's 21- years of age with a high school education and the past work you've just described. If that individual were capable of performing medium work as that's defined in the regulations and that she could lift or carry, push or pull up to 25 pounds frequently, 50 pounds occasionally, could stand or walk six to eight hours a day, could sit six to eight hours daily. And if this individual were capable of performing work where interpersonal contact is only incidental to the work performed, for example assembly work, the complexity of tasks is learned and performed by rote with few variables and little judgment and supervision required is simple, direct and concrete. Would this individual be able to perform any of the claimant's past work?
> A: No Judge.
> Q: Would there be other work such an individual could perform?
> A: There would be...janitor,...groundskeeper,...dishwasher.

(Tr. 49).

The Court believes the hypothetical the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). The Court further believes that the VE's responses to this hypothetical question constitute substantial evidence supporting the ALJ's conclusion that Plaintiff could perform the jobs of janitor, groundskeeper, and dishwasher. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly

-8-

phrased hypothetical question constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 5th day of March, 2014.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)